CORNELIUS B. McCRELLIS, RELATOR, v. JOHN CURRAN, RESPONDENT.

Argued November. 10, 1913—Decided November 5, 1914.

The provisions of "An act concerning the term of office of certain officers in cities of the second class in this state" (*Pamph. L.* 1904, *p.* 151), fixing the terms of office of the several officers specified therein, repealed *pro tanto* the provision of section 5 of "An act relative to the time of election and appointment and terms of office of officers elected or appointed in cities in this state" (*Pamph. L.* 1901, *p.* 41) ; and was not, in turn, repealed by section 5 of "An act relative to the time of election and appointment and terms of office of officers elected or appointed in towns, townships, boroughs, and other municipalities of this state" (*Pamph. L.* 1905, *p.* 14).

On *quo warranto.* Application to enter judgment on special verdict.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and KALISCH.

For the relator, *Theodore Strong.*

For the defendant, *George S. Silzer.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. This case involves the title to the office of street commissioner of the city of New Brunswick. Most of the questions involved are identical with those presented in the case of Schneider *v.* Atkinson (just decided), in which the office of city surveyor of that municipality was the subject of the litigation. The term of each office is fixed by the same ordinance, passed under the authority of the same statute, and is of the same duration, *i. e.*, three years. The only variation in the two cases appears in the history of the incumbency of the respective offices—the terms thereof were

fixed by the ordinance of December 9th, 1907—as recited in the special verdicts. In the verdict, in the present case, the facts found are that on January 1st, 1908, one Kemp was appointed street commissioner for three years. He served as such until December 31st, 1909, and then tendered his resignation, which was accepted. On January 1st, 1910, one Jalin was appointed to the office for the term prescribed by law. On January 8th, 1912, council declared the office of street commissioner vacant, and thereupon appointed McCrellis, the present relator, to it for the term prescribed by law. On the 5th of August, 1912, Jalin resigned as street commissioner, the resignation stating that it was to take effect July 1st of that year, and his resignation was accepted. Thereafter McCrellis assumed to act as such officer. On January 1st, 1913, council passed a resolution declaring the office of street commissioner vacant, and thereupon appointed Curran, the defendant, to that office for the term prescribed by law.

We have already pointed out in our opinion, in Schneider *v.* Atkinson, that the "term prescribed by law" is three years; and that under the act of 1904 entitled "An act concerning the term of office of certain officers in cities of the second class of this state" (*Pamph. L., p.* 151), each successive appointee holds for the full term of three years, whether appointed at the end of the term of his predecessor, or to fill a vacancy. This being so, the appointment of Jalin, on January 1st, 1910, to succeed Kemp, entitled him to hold the office until January 1st, 1913. The declaration of council, therefore, on January 8th, 1912, that the office was vacant, was contrary to the fact, and its action in electing McCrellis was in violation of the statute of 1904, and entirely nugatory. The resignation of Jalin, to take effect July 1st, 1912, left the office vacant, notwithstanding the fact that thereafter McCrellis, under color of his void election, assumed to perform the duties and receive the emoluments thereof. The office being vacant on January 1st, 1913, council, by its action on that day in electing Curran thereto, filled the vacancy which was then existing, and he became entitled to hold the office until January 1st, 1916.

It is argued on behalf of the relator that the appointment of Jalin to succeed Kemp was not for a full term, but only for the unexpired term of Kemp, viz., until January 1st, 1911; that, therefore, after this latter date there was a vacancy which remained unfilled until January 8th, 1912; and that the effect of the appointment of McCrellis on that day entitled him to hold office until January 1st, 1915. This contention is based upon the provision of section 5 of the act of February 28th, 1901, entitled "An act relative to the time of election and appointment, and terms of office of officers elected or appointed in cities in this state." *Pamph. L.*, p. 41. The section appealed to declares that "all vacancies in offices in any city of this state arising from, or created by, any other cause than expiration of term of office shall be filled for the unexpired term only." But the conclusive answer to this contention is that this provision, so far as it relates to the office of street commissioner in cities of the second class, was repealed by section 2 of the act of 1904 above referred to.

It is suggested that this repealer was in turn repealed by section 5 of the act of February 15th, 1905 (*Pamph. L.*, p. 14), entitled "An act relative to the time of election and appointment, and terms of office of officers elected or appointed in towns, townships, boroughs and other municipalities of this state." This section is identical in its wording with that of section 5 of the act of February 28th, 1901, except that in the place of the words "any city" the words "any town, township, borough or other municipality" have been substituted. The argument is that the legislature, by the use of the words "or other municipality," intended that the legislation should be operative, not only in municipalities of the classes specially named, but in *all* other municipalities, including cities. That this argument is unsound will appear from a reading of the opinion of the Court of Errors and Appeals in the case of *Wright* v. *Campbell*, 74 *N. J. L.* 609. The primary purpose of the act of 1901 was to consolidate municipal, or charter, elections in the various cities of the state with the general, or state, elections held therein on the first Tuesday after the first Monday of November in each year. After the passage of that

act charter elections in our cities were held on the same days as the general elections for county and state officers; while, in the municipalities of lower rank, the charter elections continued to be held in the spring. In the latter year the legislature passed the statute which has just been referred to. That statute is an exact transcript of the act of 1901 in every particular, except that where the word "city," or its plural, appears in the earlier statute, the words "town, township, borough and other municipality," or their plurals, are substituted in the latter act. The two acts together provide a complete scheme for the holding of the municipal elections of the state, the latter act being the complement of the former, and dealing with those municipalities not within its purview. The act of 1904, dealing with the terms of certain officers in cities of the second class is, therefore, not at all affected by the later act of 1905.

The defendant is entitled to judgment on the special verdict.